1   (Counsel of record are listed on the next page)

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10

11   JAVIER MUNOZ, an individual; STEVEN          CASE NO. C07-00970 MHP
     TILLER, an individual; KEVIN LAY, an
12   individual; JAMES WINN, an individual;       **JOINT NOTICE OF MOTION AND**
     individually, on behalf of the general public,   **MOTION FOR FINAL APPROVAL OF**
13   and on behalf of all others similarly situated,   **CLASS ACTION SETTLEMENT;**
                                                  **MEMORANDUM IN SUPPORT OF**
14                    Plaintiffs,                 **MOTION; [PROPOSED] ORDER**

15          vs.
                                                  Date:       November 17, 2008
16   UPS GROUND FREIGHT, INC., a business         Time:       2:00 p.m.
     entity form unknown; OVERNITE               Courtroom:  15, 18th Floor
17   TRANSPORTATION COMPANY, a business           Judge:      Hon. Marilyn H. Patel
     entity, form unknown; MOTOR CARGO, a
18   business entity, form unknown,

19                    Defendants.

20

21

22

23

24

25

26

27

28

Case No. C07-00970 MHP

1  J. WYNNE HERRON (SB# 71192)
   JOSEPH CLAPP (SB# 099194)
2  HERRON & HERRON
   18360 Sonoma Highway
3  Sonoma, CA 95476
   Telephone: (707) 933-4430
4  Facsimile: (707) 933-4431
   E-Mail: joeclapp@herron-herron.com
5
   Attorneys for Plaintiffs
6  JAVIER MUNOZ, STEVEN TILLER, KEVIN LAY
   and JAMES WINN
7

8  E. JEFFREY GRUBE (SB# 167324)  jeffgrube@paulhastings.com
   KATHERINE C. HUIBONHOA (SB# 207548)  katherinehuibonhoa@paulhastings.com
9  HEATHER N. MITCHELL (SB# 247509)  heathermitchell@paulhastings.com
   PAUL, HASTINGS, JANOFSKY & WALKER LLP
10 55 Second Street
   Twenty-Fourth Floor
11 San Francisco, CA 94105-3441
   Telephone: (415) 856-7000
12 Facsimile: (415) 856-7100

13 Attorneys for Defendants
   UPS GROUND FREIGHT, INC., OVERNITE TRANSPORTATION COMPANY and
14 MOTOR CARGO

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION

TO THE COURT AND ALL INTERESTED PARTIES:

PLEASE TAKE NOTICE THAT on November 17, 2008, at 2:00 p.m., in Courtroom 15 of this Court, located at 450 Golden Gate Avenue, 18th Floor, San Francisco, California, before the Honorable Marilyn H. Patel, plaintiffs Javier Munoz, Steven Tiller, Kevin Lay, and James Winn ("Plaintiffs") and defendants UPS Ground Freight, Inc., Overnite Transportation Company, and Motor Cargo ("Defendants") will and hereby do move jointly for final approval of the parties' proposed Class Action Settlement.

This joint motion is made under the authority of Rule 23(3)(e)(1)(C) on the ground that the Settlement is fair, reasonable, and adequate.

The joint motion is based on this notice; the accompanying Memorandum in Support of the parties' Joint Motion for Final Approval; the accompanying declarations of Joseph Clapp, Katherine C. Huibonhoa, and Caryn Donly; the accompanying proposed order; the Court's record of this action; all matters of which the Court may take notice; and oral and documentary evidence presented at or before the hearing on the motion.

DATED: October *10*, 2008          HERRON & HERRON

By: *Joseph Clapp /ns/*
_____
JOSEPH CLAPP

Attorneys for Plaintiffs
JAVIER MUNOZ, STEVEN TILLER, KEVIN LAY and
JAMES WINN

DATED: October *8*, 2008          PAUL, HASTINGS, JANOFSKY & WALKER LLP

By: _____
KATHERINE C. HUIBONHOA

Attorneys for Defendants
UPS GROUND FREIGHT, INC.,
OVERNITE TRANSPORTATION COMPANY, and
MOTOR CARGO

# MEMORANDUM IN SUPPORT OF MOTION

## I.    INTRODUCTION

Plaintiffs Javier Munoz, Steven Tiller, Kevin Lay, and James Winn and Defendants UPS Ground Freight, Inc., Overnite Transportation Company, and Motor Cargo Company jointly seek final approval of their Joint Stipulation of Settlement and Release between Plaintiffs and Defendants ("Settlement"). The Court entered its Order Preliminarily Approving of Proposed Settlement on July 22, 2008 ("Order") (Docket No. 50).[1]

This Settlement resolves litigation over Plaintiffs' claims for (1) failure to pay all hours worked, failure to provide all meal and rest periods, failure to pay split shift premiums, pay stub violations, and various penalties under the California Labor Code; and (2) a nationwide class cause of action under the doctrine of quantum meruit for alleged failure to pay for all hours worked. Defendants denied Plaintiffs' claims and asserted, among other defenses, that they already compensated linehaul drivers for all hours worked through their mileage pay.

This Settlement is jointly presented as the product of arm's-length negotiations by experienced counsel on both sides, following significant investigation and recognition of the strengths and weaknesses of each other's positions.

After the Court entered its Order Preliminarily Approving of Proposed Settlement, notice went out to the class. As of October 3, 2008, 355 of the 552 Class Members had filed claim forms with Rust Consulting, Inc., the Claims Administrator ("Rust").[2] Donly Decl. ¶2. No putative Class Members have submitted valid elections to opt out of the class,[3] and no putative Class Members have objected to the Settlement. Id Accordingly, the parties request that the Court grant final approval of the proposed Settlement.

---

[1] The Settlement was submitted as Exhibit 1 to the Declaration of Joseph Clapp in Support of Joint Motion for Preliminary Approval of Settlement (Docket No. 44) filed on May 23, 2008. Plaintiffs are moving separately for approval of the claim for an award of attorneys' fees and costs for class counsel, and for their claim for class representative payments. Defendants do not oppose that motion.

[2] Class Members have until October 20, 2008 to submit their Claim Forms or Requests To Be Excluded. *See* Settlement ¶ 38. As a result, the parties will not have final statistics regarding class participation rates until after this Joint Motion for Final Approval of Class Action Settlement is filed on October 10, 2008. The parties will provide updated information on or before the Fairness Hearing to be held on November 17, 2008.

[3] One individual submitted an election not to participate, but later requested in writing that his election not to participate be withdrawn. Donly Decl. ¶ 6; *see also* Letter from Claimant, attached Exhibit "Smith Letters" to Donly Decl. The parties jointly request that the Court approve the withdrawal of this individual's election not to participate.

## II.  **BACKGROUND**

Plaintiffs commenced this class action in this Court on February 15, 2007. *See* Class Action Complaint (Docket No. 1). On April 10, 2007, Plaintiffs filed a First Amended Complaint ("FAC,") (Docket No. 7). On October 29, 2007, Plaintiffs filed a Second Amended Complaint ("SAC") (Docket No. 37). The SAC is the operative complaint in this action.

### A.  **Plaintiffs' Contentions.**

Plaintiffs brought a quantum meruit claim for alleged failure to pay for all hours worked on behalf of themselves and a putative nationwide class. Plaintiffs also asserted a claim on behalf of the California subclass for alleged failure to pay for all hours worked under California's unfair competition statute, California Business and Professions Code Section 17200 *et seq.* ("Section 17200"). Additionally, Plaintiffs asserted a number of other wage and hour claims on behalf of the California subclass, including: (1) compensation for unpaid rest period time under Section 17200; (2) premiums for failure to provide rest periods under California Labor Code Section 226.7; (3) pay stub penalties under California Labor Code Section 226; (4) pay stub penalties under California Labor Code Section 226.3; (5) waiting time penalties under California Labor Code Section 203; and (6) other penalties under California Labor Code Sections 210 and 558, and IWC Wage Order 9-2001 that derived from alleged Labor Code violations.

### B.  **Defendants' Contentions.**

Defendants disputed and continue to dispute Plaintiffs' allegations. Defendants expressly deny liability for any of the claims that Plaintiffs or the Class raised or could have raised. Defendants contend that they treated their linehaul drivers fairly and lawfully, and that they already have fully compensated linehaul drivers through their mileage pay.

Specifically, Defendants maintain that Plaintiffs' quantum meruit claim fails because the linehaul drivers agreed to, and were aware of, their compensation arrangement. Defendants also dispute violating any of California's wage and hour laws. For example, they maintain that they provided linehaul drivers with the opportunity to take rest breaks and second meal periods. In addition, Defendants assert that the linehaul drivers' mileage pay compensated them for their rest breaks. Defendants further contend that they do not owe any split shift

1  premiums because they pay far in excess of the minimum wage, and California law credits wages
2  in excess of the minimum wage against any split shift premium.

3  **III.    PROCEEDINGS, DISCOVERY, AND MEDIATION**

4            Plaintiffs commenced this action on February 15, 2007, and filed the FAC on April
5  10, 2007.

6            On May 7, 2007, Defendants filed a motion to dismiss Plaintiffs' quantum meruit
7  claim on the grounds that (1) an express policy covers compensation for delay time, and
8  (2) neither party had, or could have had, a reasonable expectation of compensation for delay time,
9  a requirement for a quantum meruit claim. *See* Motion To Dismiss (Docket No. 15). On June 20,
10 2007, this Court denied Defendants' Motion To Dismiss Plaintiffs' quantum meruit claim because
11 Plaintiffs met the liberal pleading requirements of Federal Rule of Civil Procedure 8. *See* Order
12 Denying Motion To Dismiss (Docket No. 20).

13           Plaintiffs filed their SAC on October 29, 2007. The SAC included two additional
14 substantive claims for the California subclass: (1) premiums for failure to provide a second meal
15 period for drivers who worked more than 10 hours under California Labor Code Section 226.7
16 and Section 17200; and (2) one hour of pay at the minimum wage for working a "split shift"
17 under IWC Wage Order 9-2001(4)(C) and Section 17200. In addition, Plaintiffs added several
18 claims for penalties under the Private Attorneys General Act ("PAGA"), California Labor Code
19 Section 2699(f).

20           The parties agreed to stay formal discovery in this matter pending mediation.
21 However, in the interest of ensuring a meaningful mediation, counsel for both parties engaged in
22 dialogue regarding what information and data would be helpful to exchange in preparation for the
23 mediation. Defendants thereafter provided Plaintiffs with all (and more) of the information and
24 documents they requested, including relevant policies and handbooks; pay matrices; raw dispatch,
25 payroll, and time systems data; and prepared tables regarding Defendants' operations, incidents of
26 delay payments made, and employee counts and turnover. Declaration of Joseph Clapp in
27 Support of Joint Motion for Final Approval of Class Action Settlement, ¶ 4-5 ; *see also*
28 Settlement ¶ 22, attached to Proposed Order Granting Final Approval of Class Action Settlement.

Armed with sufficient information to assess the relative strengths and weaknesses of their positions, the parties participated in a meaningful and productive mediation with mediator Anthony Piazza on November 16, 2007. They submitted extensive briefs and participated in a full day of mediation that involved prolonged, arms-length negotiations. ¶ 6; Settlement ¶¶ 21-22. The parties reached a Settlement, the terms of which are outlined below.

## IV.    SUMMARY OF SETTLEMENT TERMS

The conditionally certified class[4] includes all individuals currently or formerly employed as linehaul drivers by Defendants who were domiciled[5] within the State of California during the period February 15, 2003, to July 22, 2008, and who have not opted out of the class. Settlement ¶ 5. The parties have identified 552 Class Members. The principal terms of the proposed Settlement are as follows:

- Total settlement amount is $3 million, to be allocated as follows:
  - Approximately $2,268,000 to the conditionally certified class to be distributed pro rata according to the number of weeks that Class Members worked during the covered period, with any residue reverting to Second Harvest Food Bank of San Diego;
  - $600,000 for attorneys' fees and $12,000 for costs;
  - $30,000 to the four Plaintiffs who served as Class Representatives ($7,500 each);
  - $60,000 to the California Labor and Workforce Development Agency ("LWDA") for its share of the settlement and civil penalties pursuant to PAGA; and
  - $30,000 to a third-party claims administrator.[6] *Id.* ¶¶ 25-31.

---

[4] Defendants agree that certification of the class is warranted for settlement purposes only. Should the Court decline to grant approval of the settlement, the agreement to stipulate to a settlement class shall have no binding or precedential effect for the resumption of litigation.
[5] In Defendants' operations, a driver's "domicile" terminal is his or her home base terminal.
[6] The parties originally estimated that the claims administration process would cost approximately $25,000; the current estimate, however, is approximately $30,000. Donly Decl. ¶3.

- The dismissal *without* prejudice of all claims alleged in Plaintiffs' SAC related to current and former linehaul drivers domiciled in terminals outside the State of California. *Id.* ¶ 23.

- The dismissal *with* prejudice of all claims alleged in Plaintiffs' SAC related to Class Members. *Id.* ¶¶ 23, 45.

In return for these payments, Plaintiffs and all Class Members (other than those who submit a timely Request to be Excluded) will release all claims in the action or otherwise concerning meal periods, rest periods, wages, record-keeping, or pay stubs, and all related claims for relief or penalties regarding the subject matter of this action. *Id.* ¶ 45.

Other terms and conditions of the settlement are set forth in the Settlement (Docket No. 44 and attached as Exhibit 1 to [Proposed] Order Granting Joint Motion for Final Approval of Class Action Settlement).

## V. PRELIMINARY APPROVAL OF THE SETTLEMENT AND NOTICE PROCESS

### A. Joint Motion And Order Granting Preliminary Approval.

On May 23, 2008, the parties submitted a Joint Motion for Order (1) Conditionally Certifying Settlement Class, (2) Preliminarily Approving of Proposed Settlement, (3) Approving Notice to Class, (4) Approving Notice of Proposed Settlement under CAFA, and (5) Scheduling Final Approval Hearing, ("Joint Motion for Preliminary Approval") (Docket No. 43). The Court held a hearing on the Joint Motion on July 21, 2008, and the following day issued an Order (1) Conditionally Certifying Settlement Class; (2) Preliminarily Approving of Proposed Settlement; (3) Approving Notice to Class; (4) Approving Notice of Proposed Settlement under CAFA; and (5) Scheduling Final Approval Hearing ("Order") (Docket No. 50).

### B. CAFA Notice.

On or about May 30, 2008, Paul Hastings' staff, acting under counsel's direction, in accordance with the requirements of CAFA, caused to be mailed a copy of the proposed Settlement, the complaint, the FAC, the SAC, the Joint Stipulation of Settlement and Release, the Proposed Notice of Proposed Class Action Settlement, the Proposed Claim Form, and a complete list of Class Members (and the estimated proportionate share of the settlement claims per state) to

the Attorneys General in each of the following jurisdictions encompassed by the Settlement: the states of Arkansas, Arizona, California, Georgia, Missouri, Nebraska, Nevada, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, South Dakota, Tennessee, Texas, Utah, and Washington; and the United States. Declaration of Service of CAFA Notice ("CAFA Decl.") (Docket No. 47). Defendants therefore have discharged their obligations under CAFA to provide notice to the appropriate state and federal officials. *See* Order ¶ 4. None of these Attorneys General have filed objections to the Settlement. *See* Declaration of Katherine C. Huibonhoa In Support of Joint Motion for Final Approval ("Huibonhoa Decl."), ¶ 4.

**C.   Notice To The Class.**

The procedures for giving notice to the Class Members, as set forth in the Settlement and the Order, have been fully and properly carried out. The Court directed that the parties' proposed notice of class action settlement and claim form (attached as Exhibits to Donly Declaration) (collectively, "Class Forms") be sent to Class Members in the manner specified by the Settlement. Order ¶ 3; *see also* Settlement ¶¶ 32-36. The parties agreed that Class Members would receive due notice of the Settlement (including the number of work weeks shown by Defendants' records and their estimated settlement payment), the opportunity to contest the number of work weeks shown for them, and the opportunity to opt out of the Settlement. Settlement ¶¶ 31, 32, 37, 38.

The parties have provided notice to Class Members in this regard. On or about September 5, 2008, Rust mailed the Class Forms to the 552 individuals defined in the parties' Settlement by first-class mail. Donly Decl., ¶ 4. Prior to the initial mailing of the Class Forms, Rust used skip tracing methods to verify the accuracy of all addresses to ensure that they were sent to the Class Members at the addresses most likely to result in immediate receipt of the Class Forms. Donly Decl. ¶ 4 As of October 3, 2008, only 30 (or approximately 5% percent) of the 552 Class Forms had been returned to Rust by the U.S. Postal Service. *Id.* ¶ 4. After obtaining additional information about the mailing addresses by running address traces for these returned forms, 15 were remailed. Of those remailed, 5 were returned a second time. *Id.* ¶ 4.

Rust also provided a toll-free telephone response service to assist Class Members

1    with questions about the Class Forms. Rust personnel trained in the details of the Settlement

2    answered calls from Class Members. *Id.* ¶ 5. These personnel received and responded to

3    numerous calls through October 8, 2008, and they will continue to take calls from Class

4    Members. Of those calls, 9 requested, and were promptly sent, additional copies of the Class

5    Forms. *Id.* ¶ 5.

6          As of October 3, 2008, approximately 64 percent of the 552 Class Members had

7    filed claim forms. Rust had not received a single objection to the Settlement in response to the

8    Class Forms. *Id.* ¶ 2.[7] Nor had anyone submitted a valid election not to participate. *Id.* ¶ 2. One

9    individual submitted an election not to participate, but later requested in writing that his election

10    not to participate be withdrawn. *Id.* ¶ 6; *see also* Letters from Claimant, attached Exhibit "Smith

11    Letters to Donly Decl." The parties jointly request that the Court approve the withdrawal of this

12    individual's election not to participate.

13          Finally, Rust sent reminder post cards on or about October 3, 2008 to those Class

14    Members who had not already submitted claim forms or elected not to participate. Donly Decl.

15    ¶ 7. These combined efforts have ensured that the class is fully noticed and well versed in the

16    terms and conditions of the Settlement.

17          Because Class Members may submit their Claim Forms or Requests To Be

18    Excluded until October 20, 2008, the parties will not have final statistics regarding class

19    participation rates until after this Joint Motion for Final Approval of Class Action Settlement is

20    filed. The parties will provide updated information on or before the Fairness Hearing to be held

21    on November 17, 2008.

22

23

---

24    [7] Pursuant to the Order Preliminarily Approving of Proposed Settlement Agreement, the Class Forms requested that Class Members file objections to the Settlement within 90 days after entry of the Court's Order Preliminarily

25    Approving of Proposed Settlement on July 22, 2008. The Order and Class Forms further provided that any Class Member may appear at the final approval hearing in person or by his or her attorney to object to the Settlement or the

26    awards of the Class Representatives Payments and the Class Counsel Fees and Expenses Payments. However, for such comments or objections to be considered at the hearing, Class Members must file comments with the Clerk of

27    Court, and mail comments to Class Counsel and Defendants' Counsel, no later than 90 days after entry of the Court's Order Preliminarily Approving of Proposed Settlement on July 22, 2008. *See* Notice of Proposed Class Action

28    Settlement and Hearing Date for Court Approval ¶¶ 16, 17, attached as Exhibit "Notice of Settlement" to Donly Decl.; Order ¶¶ 6, 10, 11.

# VI.  THE SETTLEMENT MERITS FINAL APPROVAL

## A.  Standard For Approval.

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation. *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976). It is for this reason that federal courts recognize the utility of settlement classes. *Amchem Prods. v. Windsor*, 521 U.S. 591, 618 (1997).

On a motion for final approval of a class action settlement under Rule 23(e), a court's inquiry is whether the settlement is "fair, adequate and reasonable." *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982), *cert. denied sub nom*, *Byrd v. Civil Serv. Comm'n*, 459 U.S. 1217 (1983). A settlement is fair, adequate and reasonable — and thus merits final approval — when "the interests of the class are better served by the settlement than by further litigation." *Manual for Complex Litigation Fourth* (Fed. Judicial Center 2004) ("Manual"), §§ 21.6 *et seq.* at 309.

Due to the impossibility of predicting any litigation result with certainty, a district court's evaluation of a settlement essentially amounts to "nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice.'" *Officers for Justice*, 688 F.2d at 625 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 468 (2d Cir. 1974)). Of particular concern is whether "class counsel adequately pursued the interests of the class as a whole." *Staton v. Boeing Co.*, 327 F.3d 938, 961 (9th Cir. 2003). But the Ninth Circuit will not reverse a district court's approval of a class action settlement "unless the fees and relief provisions clearly suggest the possibility that class interests gave way to self-interest." *Id.*; *accord Officers for Justice*, 688 F.2d at 626 ("[W]e reverse only upon a strong showing that the district court's decision was a clear abuse of discretion."). Absent such a suggestion, courts should give due regard to what is otherwise a "private consensual agreement" between the parties. *Officers for Justice*, 688 F.3d at 625; *accord Church v. Consolidated Freightways, Inc.*, 1993 WL 149840 (N.D. Cal. 1993); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379 (D. Ariz. 1989), *aff'd sub nom*, *City of Seattle*, 955 F.2d 1268; Manual § 21.61 at 309 ("The judicial role in

1  reviewing a proposed settlement is critical, but limited to approving the proposed settlement,

2  disproving it, or imposing conditions on it.  The judge cannot rewrite the agreement.").

3       Here, the parties reached a non-collusive settlement after sufficient informal

4  discovery enabled counsel to form educated assessments about the strength of Plaintiffs' claims,

5  the validity of Defendants' defenses, and the value of the case.  *See* Clapp Decl. ¶ 4-5; Huibonhoa

6  Decl., ¶ 3.  Because obtaining class certification, overcoming Defendants' mileage pay piece-rate

7  defense (which would be a complete defense to most of Plaintiffs' claims), and establishing

8  liability posed difficult hurdles for Plaintiffs that justified compromise of their claims, the

9  Settlement falls well within the range of reasonable outcomes and merits approval under Rule

10  23(e).

11  **B.      The Settlement Should Be Presumed Fair.**

12       The Court should begin its analysis with a presumption that the Settlement is fair

13  and should be approved:

14       > [A] presumption of fairness exists where:  (1) the settlement is
       > reached through arms-length bargaining; (2) investigation and
15       > discovery are sufficient to allow counsel and the court to act
       > intelligently; (3) counsel is experienced in similar litigation; and (4)
16       > the percentage of objectors is small.

17  *Dunk v. Ford Motor Co.*, 48 Cal. App. 4th 1794, 1802 (1996); *accord 7-Eleven Owners for Fair*

18  *Franchising v. Southland Corp.*, 85 Cal. App. 4th 1135, 1146 (2000); *Ellis v. Naval Air Rework*

19  *Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981); *In re Wash. Pub.*

20  *Power Supply Sys. Sec. Litig.*, 720 F. Supp. at 1387.  All four factors are present here.

21       First, the Settlement was reached only after arm's-length and good-faith

22  negotiations.  There are no indicia of collusion.  *See* Huibonhoa Decl., ¶ 3; Clapp Decl., ¶ 6.

23       Second, the parties engaged in a significant exchange of relevant data in advance

24  of mediation.  Specifically, Defendants provided Plaintiffs with all (and more) of the requested

25  information and documents, including relevant policies and handbooks; pay matrices; and raw

26  dispatch, payroll, and time systems data; and prepared tables regarding Defendants' operations,

27  incidents of delay payments made, and employee counts and turnover.  *See* Clapp Decl., ¶ 4-5.

28  As a result of these efforts the parties had sufficient information to evaluate the strengths and

weaknesses of the class claims and defenses, whether to pursue litigation or settle, and the appropriate settlement value for the claims at issue.

Third, Class Counsel are experienced in wage-and-hour class-action litigation, acted in good faith, and have represented their clients' best interests in reaching the Settlement. *See id.*, ¶ 2-3.

> "Great weight" is accorded the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. This is because "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." Thus, "the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel."

*Nat'l Rural Telecommc'ns Coop. v. Direct-TV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (citations omitted); *see also In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, MDL Docket No. 901, 1992 U.S. Dist. LEXIS 14337, at *8 (C.D. Cal. June 10, 1992) (finding belief of counsel that proposed settlement represented most beneficial result for class to be a compelling factor in approving settlement).

Finally, and most tellingly, there have been absolutely no objections to the Settlement to date. Donly Decl., ¶ 2. Thus, the Court should presume that the class relief in this Settlement is fair.

**C.** **The Value Of the Settlement Supports Approval.**

"[I]n any case there is a range of reasonableness with respect to a settlement. . . ." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972). The $3 million settlement amount in this case is well within that range of reasonableness. This is especially true in light of the strong defenses to the claims in this action, including Defendants' mileage pay piece-rate defense (which would be a complete defense to most of Plaintiffs' claims). Plaintiffs faced the very real possibility that if they proceeded to trial, they might obtain little if any recovery for the class.

/ / /

/ / /

/ / /

/ / /

1    To estimate the value of continuing to litigate, the Plaintiffs considered the

2    inherent risks, the potential magnitude of a recovery, and the probable length of the delay in

3    payment.

4           **1.    The risks inherent in continued litigation are great.**

5           To assess the fairness, adequacy, and reasonableness of a class action settlement,

6    the Court must weigh the immediacy and certainty of substantial settlement proceeds against the

7    risks inherent in continued litigation. *See In re General Motors Corp.*, 55 F.3d 768, 806 (3d Cir.

8    1995) ("[T]he present value of the damages plaintiffs would likely recover if successful,

9    appropriately discounted for the risk of not prevailing, should be compared with the amount of

10   the proposed settlement.") (Internal quotation marks and citation omitted); *Boyd v. Bechtel Corp.*,

11   485 F. Supp. 610, 616-17 (N.D. Cal. 1979).

12          This Settlement affords the Class prompt and substantial relief, while avoiding

13   significant legal and factual hurdles that otherwise may have prevented the Class from obtaining

14   any recovery at all. Class Counsel are experienced and realistic, and understand that the

15   resolution of their claims — the outcome of class certification, trial and any attendant appeals —

16   were inherently uncertain in terms of both outcome and duration.

17          The principal claims in this lawsuit for failure to pay for all hours worked rest on

18   the quasi-contractual theory of quantum meruit. Defendants strongly deny liability for the claims.

19   Defendants maintain that these claims fail because the linehaul drivers agreed to and were aware

20   of their compensation arrangement. Further, Defendants contend that they already compensated

21   the linehaul drivers for this time through their mileage pay. Plaintiffs recognize that their claims

22   are innovative and that Defendants might succeed in defeating their claims if they are fully

23   litigated. Under these circumstances, the benefits available to Class Members in return for

24   releasing claims against Defendants are fair and reasonable.

25   / / /

26   / / /

27   / / /

28   / / /

## 2.  The amount offered in the Settlement supports approval.

Defendants have agreed to pay $3 million to settle this lawsuit, with over $2.2 million paid to Class Members.  Even assuming that Defendants had no defenses to Plaintiffs' claims (they had several strong defenses to all claims), the Settlement amount would represent approximately 22% of the potential recovery.  However, based on the strong defenses Defendants had to the claims in the Action, the Class Representatives faced the very real possibility that if they proceeded to trial, they might obtain little, if any recovery for the Class at all.

During the informal discovery leading to mediation, Defendants provided Plaintiffs with substantial information including the incidence of delays at terminals, mechanical breakdowns, and weather delays. Clapp Decl, ¶ 4-5. Based on this information, the Plaintiffs estimate the maximum wage recoveries for the Class as follows:

- Delay Time — $550,000
- Inspections — $1,650,000
- Breakdown Delay — $70,000
- Weather Delay — $30,000
- Rest Period — $4,500,000
- Second Meal Period — $3,000,000
- Split Shift — $400,000   Clapp Dec., ¶ 5.

In addition, Plaintiffs contend that Defendants might be held liable for substantial penalties under California law. *See* Joint Case Management Statement, filed July 17, 2007, at 6:16-7:27. But any penalties recovered pursuant to PAGA must be distributed primarily to the LWDA (75%), with only a fraction (25%) to be distributed to the drivers. CAL. LAB. CODE § 2699(i).

The adequacy of any Settlement must be judged as "a yielding of absolutes and an abandoning of highest hopes. . . . Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation. . . ." *Officers for Justice*, 688 F.3d at 624 (citation omitted; second alteration in original).

### 3. Earlier payment supports approval.

If the litigation were to continue, and if the Plaintiffs were to prevail, payment would occur at some indeterminate time in the future. Employment cases, and specifically wage-and-hour cases, are expensive and time-consuming. The Settlement, on the other hand, amplifies the economies of a class resolution by providing all Class Members substantial relief promptly and efficiently. It is consistent with the "overriding public interest in settling and quieting litigation" — "particularly . . . in class action suits." *Van Bronkhurst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) (footnote omitted); *accord* ALBA CONTE AND HERBERT B. NEWBERG, 4 NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2007).

The Court should consider that the Settlement provides for payment to the class now, rather than a speculative payment many years down the road. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998); *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). Even though trial is not presently scheduled, the parties would likely appeal after all issues are finally resolved in the trial court. An appeal might last another year or two, or even more. If the appellate court were to overturn the verdict, the case might be remanded to the trial court for further proceedings which, again, could last indefinitely.

The delay and the risks inherent in continued litigation led the Plaintiffs to conclude that fighting the lawsuit to the bitter end was not the wise course. The Settlement calls for more than $2.2 million to be paid to the Class Members now. If the litigation continues, the drivers may receive nothing at all or may receive much less at some distant time in the future.

### 4. Enhancement to Class Representatives is warranted.

The Class Representative payments are also fair and reasonable. Incentive payments serve to reward named plaintiffs for the time and effort expended on behalf of the Class, and for exposing themselves to the significant risks of litigation. *See* 4 NEWBERG ON CLASS ACTIONS, "Settlement of Class Actions," § 11.38, at 81-85 (4th ed. 2002). "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001); *see also Van Vraken v. Atl. Richfield Co.*, 901 F.

Supp. 294, 300 (N.D. Cal. 1995) (approving $50,000 participation award).

Here, the parties agreed that the Class Representatives will receive $7,500 apiece, or a total of $30,000, as reimbursement for the time and risk spent on Class matters. The four Class Representatives have dedicated scores of hours consulting with their attorneys and participating in mediation. Moreover, as the Class Representatives, they have also incurred the risk of losing and having the Court enter a judgment against them for Defendants' attorneys' fees and costs. *See* Answer to SAC at 18:3. In short, the Class Representatives not only had to devote their time and energy to this matter, but they also had to run the risk of incurring substantial financial losses in order to prosecute this action for the benefit of their fellow drivers. They deserve reimbursement for their time and compensation for bearing this risk.

**D.     The Fairness Of The Distribution Supports Approval.**

The parties believe not only that the total settlement is fair to the Class, but that the component parts are fair as well. These component parts are $2,268,000 to be distributed to the Class; $600,000 in attorney's fees and $12,000 in reimbursed litigation expenses; $30,000 to the Class Representatives to reimburse them for the time, effort, and risk demanded by this litigation; $60,000 to the LWDA; and approximately $30,000 to the third-party claims administrator. Settlement ¶¶ 25-31. Any residue shall revert to Second Harvest Food Bank of San Diego. *Id.* ¶ 25.

**1.     The plan of allocation distributes more than $2.2 million to the Class Members.**

The plan for allocating and distributing the $2.2 million to the Class Members is set forth in detail in the Settlement. After the Court granted preliminary approval of the Settlement, Defendants provided the Claims Administrator with the relevant dates that each Class Member worked in California. Donly Decl. ¶ 8. The Claims Administrator calculated each Class Member's estimated portion of the settlement and included that figure in the Claim Form mailed to the Class Member. *Id.* ¶ 8; *see also* Settlement ¶ 37. Each Class Member's portion is a pro rata share based upon the number of weeks that the Class Member worked during the class period. Settlement ¶ 31(c).

1   The parties believe that this method for determining how much each member
2   should receive possesses the dual advantages of efficiency and fairness.

3       **2.      Attorneys' fees and litigation costs.**

4       The Court may award reasonable attorneys' fees and costs upon motion by Class
5   Counsel. FED. R. CIV. PROC. 23(h)(1). In addition to the considerable amount of time Class
6   Counsel have devoted to prosecuting this lawsuit, they have also advanced well over $12,000 to
7   defray litigation expenses. The Settlement therefore contemplates that Class Counsel will move
8   for an award of $600,000 in attorneys' fees and $12,000 in costs, and that this motion will be
9   heard at the Final Approval Hearing. (Settlement ¶¶ 26-27; Class Notice ¶ 15.)

10      There are two alternative methods for calculating attorneys' fees in class actions:
11  the percentage of the recovery method and the lodestar method. *Wershba v. Apple Computer,*
12  *Inc.*, 91 Cal. App. 4th 224, 254 (2001). Courts awarding attorneys' fees in common fund cases
13  have discretion to choose either method. *Vizcaino v. Microsoft II*, 290 F.3d 1043, 1047 (9th Cir.
14  2002). The motion that Class Counsel will bring for an award of fees and costs will request that
15  the Court award fees under the percentage of the recovery method.

16      Under this method, the "benchmark" award is 25 percent of the recovery obtained,
17  with 20-30 percent as the usual range. *Vizcaino*, 290 F.3d at 1047. Since the total value of the
18  settlement recovery in this class action is $3 million, the $600,000 attorneys' fee would constitute
19  only 20 percent of the total recovery and lie at the very bottom of the "usual range."

20      **3.      Payment to LWDA.**

21      Under PAGA, the LWDA is entitled to 75 percent of a settlement of civil penalties
22  awarded under the California Labor Code. CAL. LAB. CODE § 2699(i). Here, although Plaintiffs
23  included claims for civil penalties as part of their Complaint, the crux of their Complaint was that
24  Defendants owed the Class for failure to pay for all delays, truck inspections, breakdowns, and
25  weather (*i.e.*, owed wages), waiting-time penalties (non-civil statutory penalties), and other
26  statutory penalties. The parties' Settlement does not specifically allocate sums among these
27  categories of non-civil penalties, but the parties negotiated in good faith and arrived at a fair and
28  reasonable settlement share for the LWDA of $60,000.

1    **4.    Cost of Claims Administrator.**

2        The parties agreed to use Rust Consulting, Inc. as their claims administrator. Rust

3    is an experienced administrator of class action settlements, including those of employment

4    claims. Rust has faithfully and competently carried out its obligations to administer the

5    Settlement.

6        Administration of this Settlement has required Rust to (i) establish a Qualified

7    Settlement Trust, (ii) use data provided by Defendants to prepare Claim Forms, (iii) mail Class

8    Notices and Claim Forms to Class Members, (iv) track and follow-up on returned Claim Forms

9    and Requests to be Excluded, (v) answer questions posed by Class Members, (vi) notify the

10   parties of timely and untimely claims, (vii) calculate the amounts due each Class Member, (viii)

11   make payments, (ix) determine any disputes about claims, and (x) make appropriate reports.

12   Settlement ¶ 3. Rust has performed these duties for a cost of approximately $30,000. Donly

13   Decl. ¶ 3.

14   **E.    The Best Practicable Notice Of The Settlement Has Been Provided To The**

15       **Class.**

16       The provision of the Notice to Class Members and administration of the notice

17   process as described above meets the requirements for the "best practicable" notice to Class

18   Members under the circumstances. *See* Order, ¶ 3 ("The parties' proposed notice plan is

19   constitutionally sound because individual notice will be mailed to all Class Members whose

20   identities are known to the parties, and such notice is the best notice practicable."); *see also*

21   *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) (provision of "best practicable"

22   notice with description of the litigation and explanation of opt-out rights satisfies due process);

23   *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974) (individual notice must be sent to

24   Class Members who can be identified through reasonable means); *Mullane v. Central Hanover*

25   *Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (best practicable notice is that which is "reasonably

26   calculated, under all the circumstances, to apprise interested parties of the pendency of the action

27   and afford them an opportunity to present their objections").

28

1    **F.    The Experience And Views Of Counsel Favor Final Approval.**

2              Class counsel are experienced in wage-and-hour class actions, acted in good faith,

3    and have represented their clients' best interests in reaching settlement. Clapp Decl., ¶ 2-3.

4    Counsel support the Settlement as fair, reasonable and adequate, and in the best interest of the

5    Class as a whole.  The endorsement of qualified and well-informed counsel of a settlement is

6    entitled to significant weight.  *See Officers for Justice*, 688 F.2d at 625; *Ellis*, 87 F.R.D. at 18;

7    *Boyd*, 485 F. Supp. at 617; *Linney*, 151 F.3d at 1242.  Given the competence and experience of

8    the counsel for each party, and the vigorous role they played as advocates for their clients, the

9    Court would be justified in approving this Settlement.

10   **G.    The Overwhelmingly Positive Reaction Of The Class Supports Approval Of**

11         **The Settlement.**

12             Final approval is appropriate because there have been no objections to the

13   Settlement by the Class Members or by the Attorneys General from the jurisdictions encompassed

14   by the Settlement.  Donly Decl., ¶ 2; Huibonhoa Decl., ¶ 4.

15             Pursuant to the Court's Preliminary Approval Order, Rust mailed the Class Forms

16   to the Class Members, including notice of the pending settlement and forms and instructions by

17   which to consent to join the settlement, elect not to participate in, comment on, or otherwise

18   object to the Settlement.  Donly Decl., ¶ 4.  As of October 3, 2008, none of the 552 Class

19   Members had elected not to participate in the Settlement.  *Id.* ¶ 2.  Approximately 64 percent of

20   the 552 Class Members filed claim forms.  *Id.* ¶ 2.  Overall, the Settlement has been very well

21   received by Class Members, as evidenced by the high participation rate, the absence of any opt-

22   outs from the Class, and the absence of any objections to the Settlement.  *Id.* ¶ 2.

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

# VII.    CONCLUSION

This Settlement provides substantial benefits to the Class Members. The Settlement terms are fair, reasonable and adequate. Accordingly, the parties respectfully request that the Court grant final approval of the Settlement.

DATED: October 10, 2008          HERRON & HERRON

By: _____
        JOSEPH CLAPP

Attorneys for Plaintiffs
JAVIER MUNOZ, STEVEN TILLER, KEVIN LAY and
JAMES WINN

DATED: October 10, 2008          PAUL, HASTINGS, JANOFSKY & WALKER LLP

By: _____
        KATHERINE C. HUIBONHOA

Attorneys for Defendants
UPS GROUND FREIGHT, INC.,
OVERNITE TRANSPORTATION COMPANY, and
MOTOR CARGO