UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAVIER MUNOZ, et al., | No. C 07-00970 MHP |
| Plaintiffs, | |
| v. | **MEMORANDUM & ORDER** |
| UPS GROUND FREIGHT, INC., et al., | **Re: Attorneys' Fees, Costs and Incentive Enhancements** |
| Defendants. / | |

Plaintiffs Javier Munoz, Steven Tiller, Kevin Lay and James Winn ("plaintiffs") brought this action on behalf of themselves and others similarly situated against UPS Ground Freight, Inc., Overnite Transportation Co., and Motor Cargo ("defendants") alleging failures to appropriately pay linehaul drivers for work-related services. The parties reached a settlement which was preliminarily approved on July 22, 2008. See Docket No. 50 (Preliminary Approval of Settlement Agreement). Now before the court is plaintiffs' motion for attorneys' fees, costs and incentive awards for the named plaintiffs. Having considered plaintiffs' arguments and submissions, the court enters the following memorandum and order.

BACKGROUND

Plaintiffs are current or former linehaul drivers for defendants, operating out of California terminals. A linehaul driver is a truck driver who moves freight between cities. Plaintiffs brought a quantum meruit action on behalf of a nationwide class of linehaul drivers, alleging that defendants'

wage payment policies denied linehaul drivers full compensation for services provided. Plaintiffs also alleged, on behalf of a California subclass, a series of claims for violations of California labor and unfair competition laws. See Docket No. 37 (Second Amended Complaint).

The action was initially before Judge Martin Jenkins, formerly of this court. On June 20, 2007, Judge Jenkins denied defendants' motion for a change of venue and partial motion to dismiss. Plaintiffs filed a second amended complaint on October 29, 2007. On April 7, 2008, after defendants answered, the action was reassigned to this judge. Soon thereafter, on May 23, 2008, the parties filed motions requesting class certification of a class of California-domiciled linehaul drivers and preliminary approval of a settlement. On July 22, 2008, the court conditionally certified the class and granted preliminary approval.

The settlement class includes 552 current and former linehaul drivers domiciled in terminals within California during the period between February 15, 2003, and July 22, 2008. Docket No. 50 (Order) ¶ 5. The settlement as proposed would provide for three million dollars to cover the class claims, attorneys' fees and costs, incentive awards, civil penalties and claim administrator fees. Docket No. 44 (Proposed Settlement) ¶ 25. After attorneys' fees and the other associated costs, the common fund would be distributed pro rata to the class according the number of weeks each class member worked during the covered period, with any residue reverting to the Second Harvest Food Bank in San Diego. Id. Plaintiffs' counsel requests $612,000 in attorneys's fees and costs; $30,000 as incentive awards for the named plaintiffs; $60,000 to be sent to the California Labor and Workforce Development Agency pursuant to Private Attorney General Act ("PAGA") statute; and $30,000 to cover third-party claims administration. Id. ¶¶ 26-30. In return, all claims for class members located outside of California would be dismissed without prejudice, but all claims for class members located within California would be dismissed with prejudice. Id. ¶¶ 23 & 45.

The class members had until October 30, 2008, to file claims with the claims administrator, Rust Consulting, Inc. ("Rust"). Of the 552 potential class members, 449 submitted claims to Rust.[1] Docket No. 58 (Clapp Dec.) ¶ 2. This comprises just over 81% of the potential class.

2

Plaintiffs request attorneys' fees of $600,000 or 20% of the total settlement fund and $10,147.50 for reimbursement of litigation-related expenses. Plaintiffs further request incentive awards of $7,500 for each named plaintiff.

LEGAL STANDARD

Federal Rule of Civil Procedure 23(h) provides, "In a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). When attorneys' fees are to be paid from a common settlement fund, "the relationship between plaintiffs and their attorneys turns adversarial" and "the district court must assume the role of fiduciary for the class plaintiffs." In re Wash. Pub. Power Supply Sys. Sec. Litig., 19 F.3d 1291, 1302 (9th Cir. 1994). The Ninth Circuit has stated that, in common fund cases like this one, "the district court has discretion . . . to choose either the percentage-of-the-fund or the lodestar method" to determine what constitutes a reasonable fee. Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002). The use of the percentage method for a common fund is appropriate even when the statute under which plaintiffs sued has a fee-shifting provision. Staton v. Boeing, Co., 327 F.3d 938, 967 (9th Cir. 2003). Courts usually apply the percentage method but then use the lodestar method to cross-check the reasonableness of the percentage to be awarded. See, e.g., Vizcaino, 290 F.3d at 1047, 1050; Glass v. UBS Fin. Servs., Inc., 2009 WL 306120, at *2 (9th Cir. Feb. 9, 2009) (applying and discussing the percentage method). An award of attorneys' fees as a percentage of the common fund is based on whether counsel's specific services created, increased, protected or preserved the fund. Class Plaintiffs v. Jaffe & Schlesinger, P.A., 19 F.3d 1306, 1308 (9th Cir. 1994).

In the Ninth Circuit, the "benchmark" for attorneys' fees in common fund class actions is 25% of the common fund. Paul, Johnson, Alston & Hunt v. Graulty, 886 F.2d 268, 272-73 (9th Cir. 1989); see also Glass 2009 WL 306120, at *2. This percentage may be adjusted up or down, as appropriate. Paul, Johnson, 886 F.2d at 272. If an adjustment is warranted, the court must provide a reasonable explanation of both "why the benchmark is unreasonable under the circumstances" and

3

"how it arrive[s] at the figure ultimately awarded." Id. at 272-273. The Ninth Circuit has set forth a number of factors which may be relevant to the district court's determination of the percentage ultimately awarded: (1) the results achieved; (2) the risk of litigation; (3) the skill required and quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases. See Vizcaino, 290 F.3d at 1048-50.

DISCUSSION

I.  Attorneys' Fees

Plaintiffs' counsel have requested an award of twenty percent of the common fund. In making their request, plaintiffs' counsel advance two important arguments. First, they argue that some incentive must exist to induce attorneys to represent clients who cannot pay other than on a contingency basis. As the court of appeals has noted, "It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." Wash. Pub. Power Supply Sys., 19 F.3d at 1299. Second, plaintiffs' counsel argue that the fact they have spent only about 300 hours on this case should not result in a reduction of the percentage of fees awarded. Early settlement promotes the efficient resolution of disputes and is to be encouraged, not discouraged.

These arguments are well taken, and they justify awarding plaintiffs' counsel some substantial amount beyond what they have spent in prosecuting the case. Yet they do not necessarily justify an award of twenty percent of the common fund. "[I]n the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable." Vizcaino, 290 F.3d at 1050. This is especially true when awarding the requested amount would result in a windfall. See Fischel v. Equitable Life Assur. Soc'y, 307 F.3d 997, 1007 (9th Cir. 2002) ("The fact that the case was settled early in the litigation supports the district court's ruling; the 25 percent benchmark of the percentage-of-the-fund approach might very well have been a 'windfall.'").

It should be noted at the outset that plaintiffs' counsel submitted no contemporaneous time records for work done on this case. Counsel has instead reconstructed the total hours expended, by

4

1 reviewing the tasks performed, estimating the amount of time spent on each task, and then reporting
2 the total to the court. See Docket No. 56 (Clapp Dec.) ¶¶ 9-10.  Plaintiffs' counsel submits that it is
3 not their firm's practice to keep detailed time records, because the firm takes only contingency fee
4 cases. Id.  Firms that do not bill clients by the hour commonly do not and need not keep time
5 records having the level of specificity required by those firms that do engage in hourly billing.
6 Nevertheless, some level of accounting for time is helpful in contingency fee cases, since, as noted
7 above, even a percentage-of-the-recovery award generally requires a lodestar cross-check.  While
8 contemporaneous records are not absolutely necessary, they are strongly preferred.  See United
9 States v. $12,248 U.S. Currency, 957 F.2d 1513, 1521 (9th Cir. 1991).  The court can reduce an
10 award amount where the documentation of the time spent by counsel is inadequate.  See Fischer v.
11 SJB-P.D. Inc., 214 F.3d 1115, 1121 (9th Cir. 2000).  In this case, although the documentation is
12 cursory at best, the court does not perceive any discrepancy between the hours claimed and the work
13 that would have been required to bring the case to this point.  Accordingly, the court accepts the
14 estimate of 295 hours for the purposes of calculating the lodestar.

15 A preliminary lodestar cross-check on plaintiffs' requested amount, $600,000, using
16 plaintiffs' estimated 295 hours at $425 per hour, would result in a multiplier of 4.76.  This is too
17 high.  See Vizcaino, 290 F.3d at 1051 n.6 (finding multipliers between one and four most common).
18 An award of twelve percent of the total settlement fund, or $360,000 plus any interest accrued at the
19 same rate as the settlement fund, would result in a multiplier of 2.87—a healthy return on plaintiffs'
20 counsels' investment of resources, and one likely to help create the proper incentives.

21 The determination that an award of twelve percent is appropriate is supported by the relevant
22 factors articulated by the Ninth Circuit.  See Vizcaino, 290 F.3d at 1048-50.  The overall results
23 achieved are an important factor when examining the reasonableness of attorneys' fees.  See Hensley
24 v. Eckerhart, 461 U.S. 424, 436 (1983).  Plaintiffs achieved favorable results for the class.
25 Settlement is necessarily a "compromise, a yielding of absolutes and an abandoning of highest
26 hopes."  Officers for Justice v. Civil Servs. Comm'n, 688 F.2d 615, 624 (9th Cir. 1982) (internal
27 quotations omitted).  The total $3,000,000 settlement amount reflects a recovery of approximately
28

5

twenty-nine percent of plaintiffs's estimated damages as calculated by plaintiffs.[2] Just over eighty-one percent of the putative class has filed settlement claims, and not a single class member chose to opt out. No class member appeared at the final settlement hearing to object. Class members will receive an average of several thousand dollars, and this result was achieved quickly. While it is hardly a straightforward task to measure the result obtained through settlement against some hypothetical recovery that might had been achieved had the case proceeded further, the inquiry into the result necessarily implicates such a comparison. Considering the nature of the claims and legal theories advanced, the court finds that the settlement achieved is a good result. It is not the sort of exceptional result, however, that would support a windfall-level multiplier for plaintiffs' counsel.

The risk of the litigation is also a factor to be assessed. "Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation." Teachers' Ret. Sys. v. A.C.L.N., Ltd., 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004). The quantum meruit theory of recovery was a creative approach to this sort of wage dispute, especially given defendants' theory that the mileage pay adequately compensated the linehaul drivers for the work accomplished. However, plaintiffs' claims on behalf of the California subclass would have proceeded under well-defined and oft-litigated California Business and Professions Code provisions. Given that from the beginning the proposed class representatives were all California-based linehaul drivers, there was a distinct possibility that the subsequent class action would be limited, as the settlement eventually was, to the claims based on California law. There was nothing abnormally risky about the litigation of these claims.

The skill of plaintiffs' counsel is also a factor. Counsel have significant experience in employment litigation. The moving papers filed by plaintiff in opposition to defendant's one substantive motion were, while not exceptional, at least adequate, and plaintiff was successful. Also, as noted, it appears that plaintiffs' counsel have achieved a good overall settlement.

As noted above, the contingent nature of the award supports a healthy award to plaintiffs' counsel, but not the requested twenty percent. Awarding plaintiffs' counsel $360,000 adequately compensates them for the risks they incurred.

6

Finally, a comparison to fees awarded in similar cases can be helpful, although it is rarely dispositive. See In re HPL Techs., Inc. Sec. Litig., 366 F. Supp. 2d 912, 914 (N.D. Cal. 2005) (Walker, C.J.) ("Merely comparing percentages overlooks the factors that may make a certain percentage fee reasonable in one case and unreasonable in another."). Here, given the limited hours spent by counsel on this matter and the rapidity with which the matter was settled after the motion to dismiss, a lower percentage than requested is merited. See In re Twinlab Corp. Sec. Litig., 187 F. Supp. 2d 80, 88 (E.D.N.Y. 2003) (awarding a 12% fee after finding "that a 25% fee . . . would be excessive considering that the parties did not engage in extensive discovery, motion practice, trial or appeals and that the action was settled shortly after the motions to dismiss were decided."). In sum, the relevant factors support an award below the benchmark twenty-five percent and the requested twenty percent. Guided by the fundamental principle that a fee award must be reasonable under the circumstances of the particular case, see Wash. Pub. Power Supply Sys., 19 F.3d at 1296, the court awards plaintiffs' counsel twelve percent of the common fund, or $360,000.

### B.   Lodestar Cross-Check

"Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award." Vizcaino, 290 F.3d at 1050. Plaintiffs' counsel have estimated that they spent 295 hours working on this action, at an hourly rate of $425. This results in a lodestar amount of $125,375. A fee award of $360,000 results in a multiplier of 2.87. This is within the one-to-four range articulated in Vizcaino, see 290 F.3d at 1051 n.6, and it is a fair award under the circumstances of the case.

### II.   Reimbursement of Litigation-Related Expenses

Plaintiffs' counsel request $12,000 to cover $10,147.50 of costs litigation-related costs incurred as of October 10, 2008, and additional costs anticipated to accrue prior to final approval of the settlement. A review of the proceedings in this action does not reveal any obvious inefficiencies

7

in the litigation of the action that would require a diminution of that amount. Accordingly, the court awards full costs to plaintiffs' counsel.

III.  Incentive Awards

Plaintiffs request $7,500 for each of the four named plaintiffs. A court has the discretion to award incentive fees to named class representatives in a class action suit. Van Vranken v. Atl. Richfield Co., 901 F. Supp. 294, 299 (N.D. Cal. 1995) (Williams, J.) (holding incentive award of $50,000 proper where named plaintiff helped litigation that lasted for many years, testified as a key witness at trial, and personally benefitted little from litigation). When determining incentive awards, courts may consider the following: "1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation; and 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." Id.

While some incentive award for the named plaintiffs is merited, $7,500 is too high. This litigation concluded quickly without much involvement on the part of the named plaintiffs. Given the infrequency with which plaintiffs in similar cases are held liable for paying the attorneys' fees and costs of defendants, the suggestion that the named plaintiffs risked "incurring substantial financial losses" is unpersuasive. Each named plaintiff shall receive an award of $5,000.

///
///
///
///
///
///
///
///

8

CONCLUSION

Plaintiffs' counsel shall be awarded attorneys' fees in the amount of $360,000 plus interest at the rate accrued by the settlement fund. Plaintiffs' counsel shall be awarded costs in the amount of $12,000 plus interest at the rate accrued by the settlement fund. Named plaintiffs shall be awarded $5,000 each for their involvement in this matter. The pro rata share of the common fund payable to the class members shall be adjusted accordingly.

IT IS SO ORDERED.

Dated: June 5, 2009

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

9

**ENDNOTES**

1.     Of the 449 claims received, three were received after the October 20, 2008, deadline. Docket No. 58 (Paul Dec.) ¶ 15. These three individuals would be entitled to a combined total of $13,107.87. <u>Id.</u> They will be considered parties to the settlement.

2.     Defendants provided plaintiffs with data regarding incidence of delay at terminals, mechanical breakdowns and weather delays. Based on this information and class member hourly pay rates, and using an assumption of 500 class members, plaintiffs calculated the amounts and types of lost wages as follows: (1) delay time: $550,000; (2) inspections: $1,650,000; (3) breakdown delay: $70,000; (4) weather delay: $30,000; (5) rest period: $4,500,000; (6) second meal period: $3,000,000; and (7) split shift: $400,000. Docket 53 (Clapp Dec.) ¶ 5. This amounts to approximately $10.2 million in lost wages.